**2016-1576, -1680**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

NOVA CHEMICALS CORPORATION (CANADA)
AND NOVA CHEMICALS INC. (DELAWARE),

*Plaintiffs-Appellants,*

v.

THE DOW CHEMICAL COMPANY,

*Defendant - Cross-Appellant.*

**Appeals from the United States District Court for the District of Delaware in No. 1:13-cv-01601-JPS, Judge Leonard P. Stark.**

# CORRECTED NONCONFIDENTIAL BRIEF FOR PLAINTIFFS-APPELLANTS NOVA CHEMICALS CORPORATION (CANADA) AND NOVA CHEMICALS INC. (DELAWARE)

Donald R. Dunner
Darrel C. Karl
Mark J. Feldstein
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Plainitffs-Appellants*
*Nova Chemicals Corporation*
*and Nova Chemicals Inc.(Delaware)*

April 18, 2016

**Appeal Nos. 16-1576, -1680**
**Amended Certificate of Interest**

Counsel for NOVA Chemicals Corporation (New Brunswick, Canada) and NOVA Chemicals Inc. (Delaware) certify the following (use “None” if applicable; use extra sheets if necessary):

1. The full name of every party or amicus represented by me is:

   NOVA Chemicals Corporation
   NOVA Chemicals Inc

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   NOVA Chemicals Corporation
   NOVA Chemicals Inc.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   The following entities own, directly or indirectly, more than 10% of the stock of NOVA Chemicals Inc.: International Petroleum Investment Company (IPIC), a sovereign wealth fund of the Emirate of Abu Dhabi; IPIC Holdings GmbH; NOVA Chemicals Holding GmbH; NOVA Chemicals Corporation; NOVA Petrochemicals Ltd.; NOVA Chemicals (Canada) Ltd. -NOVA Chimie (Canada) Ltd.; NC Holdings USA Inc. The following entities own, directly or indirectly, more than 10% of the stock of NOVA Chemicals Corporation: IPIC ; IPIC Holdings GmbH; NOVA Chemicals Holding GmbH.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court, the earlier appeals (No. 2010-1526; 2014-31, -1462; 2015-1257), or are expected to appear in this court are:

**Finnegan, Henderson Farabow, Garrett & Dunner, LLP.**
Donald R. Dunner, Darrel C. Karl, Ronald A. Bleeker[1],
Mark J. Feldstein, Ford F. Farabow[2], Sulay D. Jhaveri[3],
Pier D. DeRoo, Jeffrey W. Abraham[4], Martin I. Fuchs[5],
Eric J. Fues, Richard M. Hanna[6], Joann M. Neth,
Troy A. Peterson[7], Anthony Sheh[8], Michael V. Young

**Potter Anderson & Corroon, LLP**
Richard L. Horwitz[9], David Ellis Moore

**K&L Gates, LLP**
H. Woodruff Turner, Thomas A. Donovan, Thomas J. Smith,
David I. Kelch, II, Brian P. Anderson,[10] Robert D. Yeager,[11]
David R. Cohen[12], Melissa J. Tea, Brian J. Kluckman[13],
Cody Corliss[14]

**Pepper Hamilton LLP**
Louis J. Freeh[15], Lawrence A. Byrne[16], Raymond Miller

**Seitz Ross Aronstam & Moritz LLP**
Collins J. Seitz, Jr. [17]

---

[1] Mr. Bleeker is currently retired.
[2] Mr. Farabow is currently retired.
[3] Mr. Jhaveri is no longer with Finnegan.
[4] Mr. Abraham is no longer with Finnegan.
[5] Mr. Fuchs is no longer with Finnegan.
[6] Mr. Hanna is no longer with Finnegan.
[7] Mr. Peterson is no longer with Finnegan.
[8] Mr. Sheh is no longer with Finnegan.
[9] Mr. Horwitz is currently retired.
[10] Mr. Anderson is no longer with K&L Gates, LLP.
[11] Mr. Yeager is currently retired.
[12] Mr. Cohen is no longer with K&L Gates, LLP.
[13] Mr. Kluckman is no longer with K&L Gates, LLP.
[14] Mr. Corliss is no longer with K&L Gates, LLP.
[15] Louis J. Freeh is no longer with Pepper Hamilton.
[16] Lawrence A. Byrne is no longer with Pepper Hamilton.
[17] Collins J. Seitz is no longer with Seitz Ross. et al.

**Wilmer Cutler Pickering Hale and Dorr LLP**
Seth P. Waxman, Thomas G. Saunders, Sue-Yun Ahn[18],
Christina Manfredi McKinley[19], Mark C. Fleming

April 18, 2016

Respectfully submitted,

/s/ Darrel C. Karl
Donald R. Dunner
Darrel C. Karl
Mark J. Feldstein
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000

*Attorneys for Appellants/Cross-Appellees*
*NOVA Chemical Corporation and*
*NOVA Chemicals Inc.*

[18] Sue-Yun Ahn is no longer at Wilmer Cutler et al.
[19] Christina Manfredi McKinley is no longer at Wilmer Cutler et al.

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........................................................................ vii

STATEMENT OF RELATED CASES ......................................................... x

STATEMENT OF JURISDICTION ............................................................. 1

I. STATEMENT OF THE ISSUES ........................................................... 2

II. STATEMENT OF THE CASE ............................................................. 3

A. Preliminary Statement ........................................................................ 3

B. Nature of the Case, Course of Proceedings, and Disposition Below.... 7

C. Statement of Facts .......................................................................... 10

1. NOVA's Pleadings Set Forth Clearly Defined and Detailed Allegations of Fraud on the Court and Fraud on NOVA .......... 10

a. Background .................................................................. 10

b. NOVA's Complaint Alleged that the Conflict Between Evidence Proffered by Dow in the Original Infringement Action and Valenzuela's New Testimony Strongly Suggested that Dow Had Misled the Courts About Its Standing To Assert the Patents-in-Suit ........... 14

c. NOVA's Complaint Alleged that Dr. Soares Gave Contradictory Testimony in the Canadian Action that Materially Undermined Key Elements of His Testimony in the Original Infringement Action ............. 17

2. NOVA and Its Counsel Exercised Extraordinary Caution, Deliberation, and Care in Filing and Maintaining the Independent Action ................................................................ 19

a. NOVA and Its Counsel Conducted a Careful and Thorough Pre-Suit Investigation .................................... 19

b. NOVA Amended Its Complaint in Response to Dow's Motion to Dismiss To Include New Information Not Previously Known or Available for Use by NOVA in this Action ........................................................................22

c. NOVA Sought the Advice of Former Federal Circuit Chief Judge Paul R. Michel During the Preliminary Motion Stage ..................................................................26

3. The District Court's Opinion Acknowledged NOVA's Extraordinary Pre-Suit Investigation and Its Good Faith Belief that there Was a Reasonable Basis To File and Maintain this Independent Action but Nonetheless Assessed Attorneys' Fees Against NOVA ................................27

III. SUMMARY OF THE ARGUMENT...........................................................30

IV. ARGUMENT..........................................................................................32

A. Standard of Review ...........................................................................32

B. The District Court Applied an Erroneous Legal Standard in Awarding Dow Its Attorneys' Fees Under 35 U.S.C. § 285 That Improperly Punishes Litigants for Using Independent Actions To Seek Legal Redress for Fraudulently-Obtained Judgments...............33

1. The District Court Erred in Characterizing NOVA's Independent Action as an "Extreme [Litigation] Tactic[]".......34

2. The District Court Erred in Substituting the Extraordinary Nature of the Relief Sought and the Pleading Requirements in an Independent Action For the Required Finding that the Allegations in NOVA's Amended Complaint Presented an Exceptional Case that Stood Out as Compared to Other Complaints in Independent Actions........................................37

3. The District Court Improperly Relied on NOVA's "Extraordinary" Pre-Suit Investigation Undertaken in Good Faith To Support Its Erroneous Exceptional Case Finding.......38

4. This Case Does Not Stand Apart From Other Independent Actions so as To Warrant an Award of Attorneys' Fees under 35 U.S.C. Section 285....................................................40

V. CONCLUSION.........................................................................................43

**CONFIDENTIAL MATERIALS OMITTED**

The materials omitted from this brief reflect information designated by Dow as confidential under the district court's protective order and relate to information concerning settlement negotiations and testimony given by Dow's technical expert.

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*ABB Turbo Sys. AG v. TurboUSA, Inc.*,
774 F.3d 979 (Fed. Cir. 2014) ....................41

*Averbach v. Rival Mfg. Co.*,
809 F.2d 1016 (3d Cir. 1987) ....................24

*Chemtech Royalty Assocs. L.P. v. United States*,
2013 U.S. Dist. LEXIS 26329 (M.D. La. Feb. 26, 2013), *aff'd in relevant part*, 766 F.3d 453 (5th Cir. 2014) .................... 10, 14, 19, 20, 21, 24

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)....................32

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*,
458 Fed. App'x 910 (Fed. Cir. Jan. 24, 2012), *cert. denied*, 133 S. Ct. 544 (2012)....................x, 8, 11, 14, 17, 23

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*,
803 F.3d 620 (Fed. Cir.), *rehearing denied and rehearing en banc denied*, 809 F.3d 1223 (Fed. Cir. 2015), *cert. pending*, No. 15-1160, 2015 U.S. Briefs 1160 (Mar. 16, 2016) .................... x, 8-9

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)....................33

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*,
790 F.3d 1369 (Fed. Cir. 2015) ....................32, 34, 41

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
134 S. Ct. 1744 (2014)....................32

*Insite Vision Inc. v. Sandoz, Inc.*,
783 F.3d 853 (Fed. Cir. 2015) ....................32

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S. Ct. 2120 (2014)....................8

*Nova Chems. Corp. (Canada) v. Dow Chem. Co.*,
2015 U.S. Dist. LEXIS 132383 (D. Del. Sept. 30, 2015)............................*passim*

*Nova Chems. Corp. v. Dow Chem. Co.*,
133 S. Ct. 544 (2012)..........................................................................8

*Nova Chems. Corp. v. Dow Chem. Co.*,
607 Fed App'x 993 (Fed. Cir. June 9, 2015)...................................x, 9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014).........................................33, 34, 39, 41, 43

*Park-In-Theatres, Inc. v. Perkins*,
190 F.2d 137 (9th Cir. 1951)..............................................................41

*SFA Sys., LLC v. Newegg Inc.*,
793 F.3d 1344 (Fed. Cir. 2015)..........................................................32

*Site Update Solutions, LLC v. CBS Corp.*,
2016 U.S. App. LEXIS 1641 (Fed. Cir. Feb. 1, 2016)...........................41

*Superior Fireplace Co. v. Majestic Prods. Co.*,
270 F.3d 1358 (Fed. Cir. 2001)..........................................................39

*United States v. Beggerly*,
524 U.S. 38 (1998)...............................................................................36

*Vanwyk Textile Systems, B.V. v. Zimmer Machinery America, Inc.*,
994 F. Supp. 350 (W.D.N.C. 1997).....................................................36

**Federal Statutes**

28 U.S.C. § 1295(a)(1)..........................................................................1

28 U.S.C. § 1331.....................................................................................1

28 U.S.C. § 1338(a).................................................................................1

28 U.S.C. § 1927...........................................................................5, 10, 27

28 U.S.C. § 2107.....................................................................................1

35 U.S.C. § 285 .......................................................................... *passim*

**Rules**

Fed. R. App. P. 4(a) .......................................................................... 1

Fed. R. Civ. P. 11 .......................................................................... 5

Fed. R. Civ. P. 58(c) .......................................................................... 1

Fed. R. Civ. P. 60(b)(3) .......................................................................... 35

Fed. R. Civ. P. 60(d) .......................................................................... 6, 31

Fed. R. Civ. P. 60(d)(1) .......................................................................... 36

Fed. R. Civ. P. 60(d)(3) .......................................................................... 36

## STATEMENT OF RELATED CASES

This Court previously heard and decided another appeal arising from this same civil action (C.A. No. 13-1601-LPS). *See Nova Chems. Corp. v. Dow Chem. Co.*, Appeal No. 2015-1257, 607 Fed App'x 993 (Fed. Cir. June 9, 2015) (per curiam) (*"Dow III"*). The panel in that appeal consisted of Chief Judge Prost, Judge Dyk, and Judge Wallach.

This Court previously heard and decided two other appeals arising from a related civil action in the District of Delaware (C.A. No. 05-cv-0737-LPS): *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, Appeal No. 2010-1526, 458 Fed. App'x 910 (Fed. Cir. Jan. 24, 2012) (Judge Linn, then-Judge Prost, and Judge Reyna), *cert. denied*, 133 S. Ct. 544 (2012) (*"Dow I"*); and *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, Appeal Nos. 2014-1431, -1462, 803 F.3d 620 (Fed. Cir. 2015) (Chief Judge Prost, Judge Dyk, and Judge Wallach) ("*Dow II*"), *cert. pending*, No. 15-1160, 2015 U.S. Briefs 1160 (Mar. 16, 2016).

There are no cases pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF JURISDICTION

The lower court had ancillary jurisdiction over NOVA's claims because it had subject matter jurisdiction over Dow's claims of infringement in the prior *Dow I* lawsuit pursuant to 28 U.S.C. §§ 1331 and 1338(a). The lower court's January 14, 2016 final order awarding attorneys' fees was entered in the civil docket on January 15, 2016 in accordance with Fed. R. Civ. P. 58(c).

This Court has exclusive jurisdiction over NOVA's appeal pursuant to 28 U.S.C. § 1295(a)(1). A timely notice of appeal was filed on February 12, 2016 in accordance with 28 U.S.C. § 2107 and Rule 4(a) of the Federal Rules of Appellate Procedure. This Court also inherently retains supervisory appellate jurisdiction over an independent action to set aside a judgment previously affirmed by this Court that was procured, *inter alia*, by fraudulent conduct before this Court in the prior appeal.

## I. STATEMENT OF THE ISSUES

Whether the district court applied an erroneous legal standard or otherwise abused its discretion in finding this case to be exceptional and in awarding Dow its attorneys' fees and expenses under 35 U.S.C. § 285 when it:

- erroneously concluded that NOVA's filing and maintaining an independent action was an unreasonably "extreme tactic[]" when in fact it was the only federal court remedy available to NOVA at the time that could achieve reimbursement of the money that NOVA had already paid to Dow on the basis of what was reasonably believed to have been a fraudulently-obtained judgment;

- acknowledged that NOVA "had a good faith belief that there was a reasonable basis on which to proceed with" such a lawsuit; that "NOVA was not pursuing this action in bad faith or in an effort to be unreasonable and vexatious"; and that there was "no credible evidence in the record that NOVA was pursuing this case" for any improper purpose";

- specifically found that the extent of NOVA's pre-suit investigation was "extraordinary" in that "NOVA understood the seriousness of the claims it was making and in recognition of that fact took extra precautions to have the complaint reviewed independently" by three former federal court judges who concluded that the claims pled were nonfrivolous, adequately supported under the law, and sufficiently plausible so as to entitle NOVA to discovery; and

- improperly relied on such "extraordinary" pre-suit investigation to support its erroneous exceptional case finding, thereby confusing the extraordinary nature of the relief sought and the pleading requirements in an independent action with whether NOVA's allegations presented an exceptional case when compared to complaints in other independent actions.

## II. STATEMENT OF THE CASE

### A. Preliminary Statement

NOVA and its counsel fully recognized the seriousness of an independent action in equity (hereinafter "independent action") against Dow, alleging fraud on NOVA and fraud on the courts. NOVA's allegations in its Original and Amended Complaint[1] were not asserted lightly or in bad faith. Rather, they were the product of a careful and detailed review of the available record and applicable legal standards and a sincerely-held, reasonable belief that Dow and its counsel had systematically withheld evidence, altered documents, and knowingly presented false testimony, evidence, and arguments to the Courts in a manner that rendered the original judgment a grave miscarriage of justice.

The caution, deliberation, and care exercised by NOVA in filing and maintaining its independent action that included consultation with three former Federal judges—which the district court admitted was extraordinary—was set out in detail in the declarations of:

- Retired Federal Circuit Chief Judge Paul R. Michel (Appx21527-33);

[1] For the Court's convenience, a copy of NOVA's Amended Complaint is in the Joint Appendix at Appx21050-124. A specific numbered paragraph of the Amended Complaint will be cited herein as "AC¶**."

- Retired U.S. District Court Judge John C. Lifland (Appx21535-39);
- Representatives of each of NOVA's law firms: Former U.S. District Court Judge and F.B.I. Director Louis J. Freeh (Appx21541-48), and Messrs. Mark J. Feldstein (Appx21550-604), H. Woodruff Turner (Appx21606-21), and Richard L. Horwitz (Appx21623-27);
- Members of NOVA's in-house legal department: Vice-President and General Counsel William C. Mitchell (Appx21629-39) and Chief Intellectual Property Counsel Gary F. Matz (Appx21641-46); and
- NOVA's tax consultant Professor Richard D. Pomp (Appx21648-69).

NOVA, its attorneys, and its consulting former judges were all cognizant of the high standard of proof needed to prevail at trial, yet they reasonably believed that NOVA had a good faith basis to institute such an action.[2] In addition, they concluded that NOVA was entitled to discovery that would likely further substantiate its allegations, the details of which were almost exclusively within Dow's custody or control.[3]

---

[2] *See, e.g.*, Appx21527-33 at ¶¶7, 12-13, 17, 34-35; Appx21535-39 at ¶¶5, 9-11; Appx21541-48 at ¶¶10, 21-22, 27; Appx21550-604 at ¶¶3, 15; Appx21606-21 at ¶¶10-14, 17-18; Appx21623-27 at ¶¶7, 11-14; Appx21629-39 at ¶¶27-31, 40-43; Appx21641-46 at ¶¶12, 19-20, 23.

[3] *See, e.g.*, Appx21527-33 at ¶¶7, 17, 20, 36-37; Appx21542-44 at ¶¶11, 16; Appx21559-60 at ¶¶29-31; Appx21606-21 at ¶¶6, 17-18; Appx21626 at ¶13; Appx21636 at ¶41; Appx21645 at ¶23.

Although Dow prevailed on its motion to dismiss, NOVA's pleadings were neither frivolous nor exceptional within the meaning of 35 U.S.C. § 285.[4] The district court found that NOVA had "shown that it had a good faith belief that there was a reasonable basis on which to proceed with the independent suit" and therefore denied Dow's request for sanctions under 28 U.S.C. § 1927 and the inherent power of the court. *Nova Chems. Corp. (Canada) v. Dow Chem. Co.*, 2015 U.S. Dist. LEXIS 132383 at *12 (D. Del. Sept. 30, 2015) (Appx11). In so ruling, it "concluded that NOVA was not pursuing this action in bad faith or in an effort to be unreasonable and vexatious," let alone for any improper purpose such as "attempt[ing] to mount costs against Dow to gain a 'significant leverage point in negotiations to settle the parties' ongoing, multi-front patent litigation.'" *Id*. at 11-13 (Appx10-11). In particular, the district court considered the extent of NOVA's pre-suit investigation to have been "'extraordinary'" and concluded that NOVA's evidence in the form of declarations, from the three former Federal judges and others, showed "that NOVA understood the seriousness of the claims it was

[4] Indeed, prior to oral argument, [redacted] Dow [redacted] never suggested that the complaint was in violation of Rule 11. Appx23618; Appx23611-12 at ¶¶ 4-5; Appx21557 at ¶22; see also Appx21547 at ¶28; Appx21626-27 at ¶14.

making, and in recognition of that fact took extra precautions to have the complaint reviewed independently before it was filed." *Id*. at *12 (Appx11).

The district court, however, inexplicably considered NOVA's use of an independent action to be an unreasonably "extreme tactic[]," *id*. at *16 (Appx14), when in fact it was a vehicle authorized by federal common law that was expressly preserved under the Rule 60(d) of the Federal Rules of Civil Procedure. Indeed, it was the only federal court remedy available to NOVA at the time that could achieve reimbursement of the money judgment that NOVA had already paid to Dow. As a consequence, the district court's reaction to NOVA's independent action negatively impacted its view of the exceptional case issue to such a degree that any party who fails to prevail in an independent action runs a high risk of liability for attorneys' fees for having filed such an action. That is not and should not be the law.

To state a successful claim, an independent action necessarily requires serious misconduct to be pled. Thus, the issue should not be the seriousness of the allegations raised by NOVA but whether this particular independent action stands apart from other independent actions, an analysis the district court failed to conduct. Instead, the district court paradoxically relied on NOVA's "extraordinary" pre-suit investigation to support its exceptional case finding, leading to the

anomalous result that the more thorough the pre-suit investigation is, the greater the plaintiff's risk of liability for attorneys' fees.

This Court should reject the district court's legally improper expansion of 28 U.S.C. § 285 to penalize the actions of NOVA in filing and maintaining an independent action in good faith based on detailed facts found to have been plausibly alleged by three former federal judges. To the extent that NOVA's independent action stands apart from other independent actions, it does so only with respect to the extraordinary level of due care and caution which NOVA undertook when filing and maintaining this lawsuit.

**B. Nature of the Case, Course of Proceedings, and Disposition Below**

Defendant The Dow Chemical Company (herein referred to as "Dow" or "TDCC") is the original assignee of U.S. Patent Nos. 5,847,053 ("the '053 patent) (Appx21096-108), and U.S. Patent No. 6,111,023 ("the '023 patent) (Appx21110-24). Dow filed suit on October 21, 2005, alleging that NOVA Chemicals Corporation and NOVA Chemicals Inc. (collectively "NOVA") infringed the patents-in-suit by importing and selling NOVA's SURPASS polyethylene products. Appx205 at #1.

The jury found the patents-in-suit infringed and not proven to be invalid, and assessed damages in the amount of $61,770,994.60. Appx446-49. A bench trial on

standing was held the following day. *See* Appx257 at #535; Appx264 at #585. On June 18, 2010, Judge Farnan entered a judgment in Dow's favor. Appx442. On July 30, 2010, he denied NOVA's pre-trial motion to dismiss for lack of standing. Appx430; Appx432-41. Judge Farnan immediately retired, and the case was assigned to Judge (now Chief Judge) Stark.

NOVA appealed, and a panel majority affirmed on the issues of standing, definiteness, and infringement. *Dow I*, 458 Fed. App'x at 911. Judge Reyna dissented on standing and did not reach the merits of the other issues. *Id.* at 922. Certiorari review was denied. *Nova Chems. Corp. v. Dow Chem. Co.*, 133 S. Ct. 544 (2012).

On remand, the district court awarded $30,450,896 in supplemental damages plus interest and costs, but declined to award enhanced damages. Appx601-02; Appx603-29. The parties appealed aspects of this judgment in *Dow II*. During that appeal, the Supreme Court decided *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014). On August 28, 2015, this Court held that Dow's patent claims were invalid for indefiniteness in light of the *Nautilus* decision, reversed the award of supplemental damages, and dismissed Dow's cross-appeal for enhanced damages as being moot. *Dow II*, 803 F.3d 620 (Fed. Cir. 2015) ("*Dow II*"),

*rehearing and rehearing en banc denied*, 809 F.3d 1223 (Fed. Cir. 2015), *cert. pending,* No. 15-1160, 2015 U.S. Briefs 1160 (Mar. 16, 2016).

On September 23, 2013, while the supplemental damages proceeding was pending in the district court, NOVA filed a Complaint for an independent action to relieve it from the judgment in *Dow I.* Appx20004 at #1; Appx21000-49. The case was assigned to Judge Stark (Appx20001), who had presided over the supplemental damages trial but not the infringement trial.

In response to Dow's motion to dismiss (Appx20005 at #7), NOVA filed an Amended Complaint on January 30, 2014. Appx20005 at #11; Appx21050-124. Additional facts had come to light in the interim to further support NOVA's claim, and protective order issues had been resolved to permit reliance in the independent action on information and documents that had been produced in a related Canadian Action. Dow moved to dismiss NOVA's Amended Complaint on March 11, 2014 (Appx20005 at #15), which was orally granted on July 29, 2014. Appx20005 at #15; Appx21493-98. This Court affirmed without opinion. *Dow III*, 607 Fed App'x 993.

After the district court *sua sponte* raised the issue of sanctions (Appx21454; Appx21498), Dow filed a motion for sanctions, attorneys' fees, and costs. Appx20007 at #30. On September 30, 2015, the district court granted Dow's

motion for attorneys' fees pursuant to 35 U.S.C. § 285, but denied Dow's request for sanctions against NOVA and/or their attorneys pursuant to either 28 U.S.C. § 1927 or the inherent power of the court. Appx2; Appx3-17. NOVA preserved its right to challenge the award of attorneys' fees, but did not challenge the reasonableness of the amount of Dow's fee submission. On January 14, 2016, the district court entered a final order awarding Dow $2,477,060.69 in attorneys' fees and expenses. Appx1.

## C. Statement of Facts

### 1. NOVA's Pleadings Set Forth Clearly Defined and Detailed Allegations of Fraud on the Court and Fraud on NOVA

#### a. Background

NOVA does not intend to use this brief to try to convince the Court to reconsider its decision in *Dow III* affirming the district court's dismissal of NOVA's Amended Complaint. Nonetheless, a summary of the facts is necessary because a thorough understanding of Dow's conduct in the original infringement action, the relevance of *Chemtech* litigation, developments in the Canadian litigation, and how they led to NOVA's allegations of fraud in the present case is essential to the Court's review of the district court's award of attorneys' fees.

A major issue in *Dow I* was Dow's standing to assert its patents against NOVA. At issue was whether Dow's 2002 Contribution Agreement transferred the

patents-in-suit to non-party patent holding company Dow Global Technologies Inc. ("DGTI") by listing them on a "Schedule A" to that agreement. "Schedule A" was intended to identify the specific patents conveyed to DGTI and was found by the court to be controlling on this question. On the evidence in the record at that time, Judge Farnan upheld standing, but believed that the standing question raised a "substantial issue[] for appeal." Appx63920. The Federal Circuit panel split on standing, with Judge Reyna issuing a 28-page dissent. *Dow I*, 458 Fed. App'x at 916, 922.

Subsequently, however, new facts came to light: As alleged in NOVA's pleadings in the independent action, these facts undermined the Courts' reliance on extrinsic evidence regarding a document called "Schedule B Supplement" (that did not contain the patents-in-suit) which the Courts accepted as the operative "Schedule A" to the Contribution Agreement. These new facts also provided NOVA with a reasonable basis to believe that Dow and its counsel had misled the Courts regarding Dow's retention of the patents-in-suit despite Dow having entered into the Contribution Agreement conveying patents to its subsidiary.

As pled by NOVA, the conduct of Dow and its counsel had raised questions from the close of discovery as to whether Dow owned the patents-in-suit at the time suit was brought against NOVA in October 2005. On January 1, 2002, Dow

had entered into a Contribution Agreement with DGTI that stated that it "hereby convey[ed], transfer[ed], assign[ed] and deliver[ed] to DGTI … all of [Dow's] right and title to and interest in the Patent Rights ...." Appx21066 at AC¶62; Appx21682-83. The definition of "Patent Rights" in Section 1.07 of the Contribution Agreement provided for a "Schedule A" and supplements thereto to be prepared that listed the patents transferred to DGTI. Appx21068 at AC¶71; Appx21681. Patents excluded from the transfer were to be listed on a "Schedule D" list of "Excluded Intangible Assets." Appx21681 (Section 1.02); Appx21691. At the same time, the parties entered into a separate "Patent and Technology License Agreement" (Appx5575-99), whereby DGTI licensed back to Dow all of the transferred patents on a non-exclusive, royalty-bearing basis and in fact received millions of dollars in such royalties.

NOVA contended that, despite its discovery requests concerning Dow's rights in the patents-in-suit, Dow did not reveal the Contribution Agreement's existence until after the close of fact discovery in 2009. Appx21061-62 at AC¶¶47, 50; Appx21064 at AC¶55. Simultaneous with the production of the Contribution Agreement, Dow also produced (1) an undated "Schedule A" that—although it identified no specific patents by number—nonetheless stated that "*[as] of the Transfer Date*, this Schedule includes all Patent Rights of [Dow] . . . , excluding

the Excluded Patents set forth in Schedule 'D'" (Appx21693 (emphasis added), and (2) a version of "Schedule D" that Dow had altered *only days earlier* by adding the patents-in-suit to make it appear that they had not been transferred from Dow (Appx21695-748). Appx21065-67 at AC¶¶59, 63-65, 67-68. After further inquiry by NOVA, Dow produced an earlier version of "Schedule D" (Appx21750-90) created on February 18, 2002 (before the date of suit) and did not list the patents-in-suit as Excluded Assets. Appx21067 at AC¶66. Dow also produced a document titled "Schedule B Supplement" (Appx21792-22220)—modified after the complaint was filed—that it alleged was actually "Schedule A" (which also did not list the patents-in-suit). Appx21067 at AC¶¶67-68.

Judge Farnan and two judges of this Court ultimately concluded that the Contribution Agreement unambiguously transferred only patents listed on "Schedule A." NOVA, however, contended that this did not resolve the question of identifying what was the actual "Schedule A," the document labeled "Schedule A" which referred to "Schedule D" or the document labeled "Schedule B Supplement." On that point, both Courts relied on extrinsic evidence (similar to the type NOVA relied upon in *Dow I*) in the form of testimony by Dow's paralegal, Kate Maxwell, to hold that the document labled "Schedule B Supplement"—which

was not in existence when the lawsuit was filed—was the operative "Schedule A." The dissent strongly disagreed. *Dow I*, 458 Fed. App'x at 922-35.

#### b. NOVA's Complaint Alleged that the Conflict Between Evidence Proffered by Dow in the Original Infringement Action and Valenzuela's New Testimony Strongly Suggested that Dow Had Misled the Courts About Its Standing To Assert the Patents-in-Suit

It was against this backdrop of the Courts' reliance on extrinsic evidence—namely, the testimony of one Dow paralegal—that NOVA learned in 2013 about *Chemtech Royalty Assocs. L.P. v. United States*, 2013 U.S. Dist. LEXIS 26329 (M.D. La. Feb. 26, 2013), *aff'd in relevant part*, 766 F.3d 453 (5th Cir. 2014). Appx21555 at ¶16; Appx21607 at ¶7; Appx21631 at ¶¶12-14. *Chemtech* is a tax case that held that Dow's "assignment and transfer back" of "high value" U.S. patent rights to a subsidiary under the Chemtech agreement (an arrangement that paralleled Dow's subsequent "assignment and transfer back" of its patents to DGTI under the 2002 Contribution Agreement) was a "sham" partnership with "no legitimate business purposes other than tax avoidance." 2013 U.S. Dist. LEXIS 26329 at *4, *68, *72.

NOVA discovered that Edward Valenzuela, a Dow valuations specialist in charge of royalty payments to related companies and the tax consequences of those payments, had testified on direct in the *Chemtech* trial that Dow had in fact

transferred "all" its patents to DGTI (via the Contribution Agreement), which would have included thousands of U.S. patents:

> Q. Mr. Valenzuela, after the patents were distributed out of Chemtech in 1998, what further involvement did you have with respect to the patents?
>
> A. We continued to do the quarterly QPM's and earned royalties and determine payments up until the end of 2001 **when I think all of Dow's patents were contributed to an intangible holding company**.
>
> Q. So Dow continued to license the patents, but they were owned by a different entity?
>
> A. That's correct.

Appx22223 (emphasis added); Appx21060-61 at AC¶43; Appx21071 at AC¶78. On cross-examination by the United States, Mr. Valenzuela reaffirmed that he continued to compute royalties and QPM's "[u]ntil sometime **in 2001 or 2002** when this intangible holding company came into existence, **and then all patents were contributed**." Appx22224 (emphasis added).

> Q. Well, who owned it, what did [this holding company] do; what was it?
>
> A. It -- it collected all of Dow's patents. So all of Dow's patents were contributed to this intangible holding company.

Appx22224-25 (emphasis added); Appx21061 at ¶44; Appx21071-72 at AC¶¶78, 81; Appx21075-76 at AC¶88. NOVA reasonably believed from the context that

Mr. Valenzuela was referring to the 2002 Contribution Agreement where "all" patents were "contributed" to DGTI.[5]

NOVA contended that Mr. Valenzuela's testimony thus directly contradicted representations made by Dow's counsel to the District Court, this Court, and the Supreme Court, that the 2002 Contribution Agreement did not effectuate an *en masse* transfer of U.S. patents. Appx21068 at AC¶69; Appx21071-72 at AC¶77-78, 81; *see, e.g.*, Dow's Red Brief in *Dow I* at 6-7. Consequently, NOVA had a reasonable basis to believe that Mr. Valenzuela's testimony materially contradicted the testimony of Dow's paralegal and likely would have precluded the Courts' acceptance of Dow's theory that the document titled "Schedule B Supplement"—that only listed four of Dow's over 7,000 pre-2002 U.S. patents—was the controlling "Schedule A."[6] If "Schedule B Supplement" was not "Schedule A" but only a supplement thereto or to some other schedule not of record, then the issue would remain whether Dow's patents-in-suit were actually listed on "Schedule A." Dow itself has admitted that they are not found on the unaltered "Schedule D" list of Dow's retained patent assets that was prepared prior to the date of suit.

---

[5] Appx21650 at ¶8; *see also* Appx21531-32 at ¶¶27, 33; Appx21608-09 at ¶8; Appx21631-32 at ¶¶16, 19.

[6] Appx21544-45 at ¶¶17-18; Appx21556 at ¶¶18-19; Appx21608-09 at ¶¶8-9; Appx21632-33 at ¶¶17-22, 26; Appx21636 at ¶¶ 39-40; Appx21653 at ¶19.

Appx21068 at ¶ 70. Since Dow bore the burden of proof on standing, the new evidence impacted upon Dow's ability to prove its standing to sue.

#### c. NOVA's Complaint Alleged that Dr. Soares Gave Contradictory Testimony in the Canadian Action that Materially Undermined Key Elements of His Testimony in the Original Infringement Action

The holding that NOVA had infringed Dow's patents rested heavily on the testimony of Dow's expert witness, Dr. Soares. One infringement issue was whether the polymer in NOVA's accused product contained a certain amount of a high density "Component B" polymer that was "heterogeneously branched." *Dow I*, 458 Fed. App'x at 921. In the original infringement action, it was Dr. Soares' testimony about the two different tests that he performed on NOVA's products that, according to this Court, "gave the jury sufficient justification to find" that the "HD Fraction" in NOVA's products was the heterogeneously branched Component B. *Id*.

NOVA alleged that Dr. Soares subsequently admitted in the Canadian action[7] that some samples of allegedly "separated" HD fractions were in fact contaminated by Component A; that he "didn't believe" at any time that the TREF technique he

[7] A Canadian judge ruled that NOVA infringed Dow's Canadian patent, but that determination is currently on appeal.

used could separate blends of materials (such as blends of Component A and Component B materials) that have similar crystallization properties; and that to do so is "[p]erhaps impossible." Appx21084 at AC¶¶119-120. NOVA believed this new testimony to be irreconcilable with Dr. Soares' earlier testimony to the Delaware jury, where he stated that he had "actually" separated off the HD fractions in some of the same product grades and that it was "relatively easy" to do so. Appx21084 at AC¶120; Appx21556 at ¶20; Appx21610-11 at ¶12; Appx21632 at ¶18. Moreover, Dr. Soares also subsequently admitted during his deposition in the *Dow II* supplemental damages phase that [redacted] Appx22228-29; Appx21553 at ¶10.

Consequently, if no clean separation was possible, then NOVA believed that this would mean that Dr. Soares' infringement proofs in Delaware were conducted on samples of "Component B" material that were contaminated with a portion of "Component A" material. That, in turn, would mean that such proofs would have been incapable of proving that NOVA's products necessarily met all the material limitations for the Component B polymer recited in Dow's claims (*i.e.*, weight percentage, density, and heterogeneous branching). *See* Appx21553-54 at ¶11; Appx21644-45 at ¶18; Appx21084-87 at AC¶ 119, 124-26.

### 2. NOVA and Its Counsel Exercised Extraordinary Caution, Deliberation, and Care in Filing and Maintaining the Independent Action

#### a. NOVA and Its Counsel Conducted a Careful and Thorough Pre-Suit Investigation

NOVA regarded the newly-discovered facts in the *Chemtech* and Canadian actions as persuasive, objective evidence that strongly suggested that Dow's infringement judgment had been obtained in reliance on false information that Dow and its counsel had provided to NOVA and the Courts. As set forth in detail in the declarations filed below (Appx21527-669), NOVA and its counsel proceeded with extreme care before filing an independent action seeking relief from the judgment, amending its complaint, opposing Dow's motion to dismiss, and preparing for oral argument.

NOVA and its counsel conducted a detailed study over roughly 15 months that involved researching and considering the merits of bringing an independent action against Dow. *See, e.g.*, Appx21634 at ¶30. For example, rather than rush to court based solely on what NOVA felt was Dow's inconsistent testing evidence and protocols produced in the Canadian action,[8] NOVA was cautious and did not file for relief from the judgment until after both Dr. Soares's deposition testimony in

[8] Appx21552 at ¶¶7-9, Appx21554 at ¶¶12-14; Appx21607 at ¶6; Appx21630 at ¶8; Appx21641-42 at ¶¶5-6.

February 2013 and his Canadian testimony in September 2013. Appx21552-54 at ¶¶8-10, 14; Appx21630 at ¶9; Appx21642-43 at ¶¶6, 19-20.

As an additional check, NOVA decided in late February 2013 to obtain the advice of former Judge John C. Lifland on an early version of the filing.[9] Of the various issues under consideration, Judge Lifland agreed that NOVA had "presented a plausible and good-faith basis" for seeking relief from judgment on the lack of separation issue.[10] In particular, he noted that the "facts appeared to generate *knowingly contradictory testimony* from a paid expert," that such a contradictory opinion was not available to NOVA in the Delaware trial, and that "such an apparent contradiction should be explored by the Court." Appx21537-38 at ¶¶9-10 (emphasis added).

While this process was ongoing, NOVA learned about the *Chemtech* decision.[11] In July 2013, NOVA retained former Judge Freeh and the Pepper Hamilton firm to independently advise it about Dow's seemingly contradictory

---

[9] Appx21555 at ¶15; Appx21607 at ¶6; Appx21630-31 at ¶10; Appx21644 at ¶12.

[10] Appx21536-38 at ¶¶6-7, 9; *see also* Appx215555at ¶15; Appx21607 at ¶6; Appx21644 at ¶13.

[11] Appx215555 at ¶16; Appx21607 at ¶7; Appx21631 at ¶¶12-14.

positions in the *Chemtech* and *Dow I* litigations.[12] Professor Richard Pomp, an expert in state tax law, was also retained to evaluate, *inter alia*, the relevance of *Chemtech* to the Delaware standing issue. Appx21636 at ¶39; Appx21649 at ¶6, Appx21653-54 at ¶21.

NOVA and its counsel reviewed Mr. Valenzuela's testimony and formed the belief that Mr. Valenzuela's testimony undermined Ms. Maxwell's extrinsic evidence identifying "Schedule B Supplement" as the relevant Schedule A and should have led to a different result on standing.[13]

By August 2013, outside counsel prepared a draft complaint that included the standing issue based on the Valenzuela testimony in addition to the Soares separation issue. Appx21556 at ¶19. It was decided not to pursue the other infringement issues because they were highly technical and less straightforward to explain. Appx21556-57 at ¶21; Appx21644 at ¶16. Further revisions were made after Dr. Soares testified at trial in the Canadian action, providing additional support for NOVA's belief that his testimony was irreconcilable with his testimony in the Delaware Action. Appx21556-57 at ¶¶ 20-21.

---

[12] Appx21542 at ¶¶5-6; Appx21555-56 at ¶17; Appx21634 at ¶27; Appx21644 at ¶15.

[13] Appx21542-45 at ¶¶ 7-18; Appx21556 at ¶18; Appx21608-09 at ¶¶8-9; Appx21625-26 at ¶11; Appx21632 at ¶¶17-22.

Based on input from several law firms,[14] the draft complaint underwent numerous revisions before being filed on September 23, 2013. As noted above, NOVA also asked former Judge Freeh and Pepper Hamilton to act as a fresh set of eyes and to provide independent advice—unencumbered by any prior involvement in the Delaware infringement action—on the propriety of filing an independent action. They concluded that NOVA had a plausible, good faith basis for filing the complaint, and entered their notices of appearance in this action.[15]

#### b. NOVA Amended Its Complaint in Response to Dow's Motion to Dismiss To Include New Information Not Previously Known or Available for Use by NOVA in this Action

NOVA amended its complaint to rebut arguments raised by Dow and to include new information obtained in the Canadian action that was not available to it in the earlier Delaware Action. For example, by November 2013, Dow had produced in the Canadian case a copy of the Contribution Agreement with a cover page entitled "Agreement Summary Form" (Appx21677). That cover page, which had not been attached to the Contribution Agreement or otherwise produced in the Delaware Action, Appx21612 at ¶15, was relevant for multiple reasons. First, it

---

[14] Appx21556-57 at ¶21; *see also* Appx21545-46 at ¶21; Appx21611-12 at ¶ 14; Appx21634 at ¶30; Appx21645 at ¶20.

[15] *See, e.g.*, Appx21542-47 at ¶¶6, 14-19, 22, 27; Appx21634 at ¶¶28-30.

showed that the Contribution Agreement with some form of Schedule A and Schedule D (but no "Schedule B Supplement") was circulated to 17 individuals within Dow, many of whom were in Dow's tax department, including Mr. Valenzuela. Appx21612 at ¶15; Appx21635 at ¶¶34-35. This rebutted Dow's assertion in its original motion to dismiss (Appx23385) that Mr. Valenzuela had never seen the Contribution Agreement. Appx21557 at ¶24.

Second, it referenced a Dow board meeting and resolution that led to the approval of the Contribution Agreement. NOVA reasonably believed that the minutes or preparation materials for that meeting, none of which was ever produced, would reveal what patents Dow transferred to DGTI and whether such transfers were done for tax avoidance purposes,[16] thereby undermining the veracity of Ms. Maxwell's testimony. *Dow I*, 458 Fed. App'x at 916 n. 7.

Third, it suggested that one or more of the previously undisclosed executives and other individuals listed as distributees on the summary form might have knowledge consistent with Valenzuela's testimony that all of Dow's U.S. patents had been transferred to DGTI.

---

[16] *See* Appx21560 at ¶31; Appx21612 at ¶15; Appx21626 at ¶13.

Another significant change in the Amended Complaint was to elaborate upon, to the extent possible without discovery of information that was necessarily exclusively in the hands of Dow, the level of attorney involvement in the alleged fraud on the Court. This was a separate claim from NOVA's claim for fraud on NOVA, the latter requiring no attorney involvement.[17] NOVA alleged that the Agreement Summary Form (Appx21677) made clear that Mr. Isley, Dow's Associate General Counsel, received the 2002 Contribution Agreement when it was executed. Appx21069 at AC¶73. As a supervisory attorney for Dow, he later interacted with personnel in Dow's tax, litigation, and intellectual property departments, and was knowledgeable about the *Chemtech* litigation. Further, he met in 2009 with Mr. Simpson, then Dow's managing attorney on the Delaware Action, who was concerned about the need to produce a copy of the Contribution Agreement to NOVA and its effect on the ownership of the patents-in-suit. Appx21063-64 at AC¶¶53-54. Mr. Isley discussed Simpson's concerns about the agreement, and approved, *inter alia*, the post-dated schedules. Appx21063 at

---

[17] *See Averbach v. Rival Mfg. Co.*, 809 F.2d 1016, 1021-22 (3d Cir. 1987) (no authority exists to "limit an independent action for relief from a judgment to 'fraud on the court' as distinguished from fraud of some other sort" and noting that "[t]he *Hazel-Atlas* rule [requiring complicity of counsel] . . . has nothing to do with the elements of a cause of action for" ordinary fraud on a party).

AC¶53; Appx21066 at AC¶61. The Amended Complaint noted that Bruce Kanuch, Dow's former Managing Counsel for Litigation who testified at trial about Dow's alleged ownership of the patents, also received the Contribution Agreement via the Agreement Summary Form, and was familiar with the Chemtech agreement. Appx21063 at AC¶52; Appx21069 at AC¶73; Appx21071 at AC¶77.

In particular, NOVA noted that Mr. Simpson brought the Contribution Agreement to the attention of Dow's trial counsel and worked with trial counsel on the revision of Schedules A and D before responding to NOVA's discovery requests. Appx21063-65 at AC¶¶ 53-54, 56-57, 59-60; *see also* Appx21559 at ¶28. Also involved in the alteration of the schedules were Dow attorneys Noreen Warrick, an officer of DGTI, Michael Glenn, Dow's Associate General Counsel for Intellectual Property, and Guy Relford, Simpson's supervisor in the litigation department. Appx21063 at AC¶53; Appx21066 at AC¶61. Thus, it appeared to NOVA that Dow attorneys, including senior legal officers, were involved in what NOVA believed was Dow's fraudulent misrepresentation of the Contribution Agreement's retention of U.S. patents**.** *See also* Appx21545 at AC¶20; Appx21559 at ¶28; Appx21610-11 at ¶¶11-12.

Additionally, NOVA understood that Dow's trial counsel were intimately involved in directing testing of the NOVA's accused products, and then selectively

providing limited work product information to its experts, including Dr. Soares, while withholding presumably unfavorable test results from both Dr. Soares and NOVA. Appx21055 at AC¶18; Appx21087-89 at AC¶¶128-132; Appx21558-59 at AC¶¶26, 28. Moreover, NOVA believed that Dow's counsel was complicit in the fraud on the Court because they repeatedly elicited testimony from Dr. Soares that the alleged separation was "easy" and "actually isolated"—testimony that Dr. Soares later contradicted in the Canadian litigation. Appx21558-59 at AC¶¶27-28.

#### c. NOVA Sought the Advice of Former Federal Circuit Chief Judge Paul R. Michel During the Preliminary Motion Stage

After Dow filed its second motion to dismiss, NOVA asked former Federal Circuit Chief Judge Paul R. Michel to review Dow's motion to dismiss, NOVA's amended complaint, and various draft responses to Dow's motion.[18] In addition, Judge Michel also participated in a mock argument for the oral argument on the motion to dismiss along with Judge Freeh and NOVA's counsel.[19] As discussed in his declaration, Judge Michel "concluded that the claims pled were specific and plausible in light of the extensive details pled in support, many of which came

---

[18] Appx21527-28 at ¶¶3-5; Appx21559 at ¶29; Appx21613 at ¶17; Appx21636 at ¶40; Appx21645 at ¶22.

[19] Appx21528-29 at ¶¶8-13; Appx21546 at ¶25; Appx21559 at ¶30; Appx21613 at ¶17; Appx21627 at ¶15; Appx21636 at ¶41; Appx21645 at ¶23.

from sworn testimony and Dow documents," that NOVA had "pled many facts suggesting to me culpable involvement by several Dow attorneys and outside litigation counsel, as well as witnesses, particularly Ms. Maxwell and Dr. Soares," that such allegations were not "frivolous," and that "NOVA was entitled to discovery under the Federal Rules of Civil Procedure and the caselaw."[20]

#### 3. The District Court's Opinion Acknowledged NOVA's Extraordinary Pre-Suit Investigation and Its Good Faith Belief that there Was a Reasonable Basis To File and Maintain this Independent Action but Nonetheless Assessed Attorneys' Fees Against NOVA

While the district court found that NOVA's independent action lacked merit, it "concluded that NOVA was not pursuing this action in bad faith or in an effort to be unreasonable and vexatious" and therefore denied Dow's motion for sanctions pursuant to 28 U.S.C. § 1927. *Nova Chems. Corp.*, 2015 U.S. Dist. LEXIS 132383 at *11 (Appx10). The district court considered the extent of NOVA's pre-suit investigation to have been "'extraordinary.'" *Id*. at *12 (Appx11). It concluded that NOVA's evidence in the form of declarations showed "that NOVA understood the seriousness of the claims it was making, and in recognition of that fact took

[20] *See, e.g.*, Appx21529-30 at ¶¶13, 15, 17, 23; *see also* Appx21528-33 at ¶¶6-7, 12, 14, 16, 20, 28-32, 34-37; Appx21559 at ¶¶29-30; Appx21613 at ¶17; Appx21624-27 at ¶¶7, 11-14; Appx21636 at ¶¶39-42; Appx21645 at ¶23.

extra precautions to have the complaint reviewed independently before it was filed." *Id*. As a result, the district court concluded that "NOVA has, thus, shown that it had a good faith belief that there was a reasonable basis on which to proceed with the independent suit." *Id*.

Moreover, it found "no credible evidence in the record that NOVA was pursuing this case" for any improper purpose such as "attempt[ing] to mount costs against Dow to gain a 'significant leverage point in negotiations to settle the parties' ongoing, multi-front patent litigation.'" *Id*. at 12-13 (Appx11). In addition, it ruled that it would not "be proper to treat NOVA's failure to state a claim on which relief could be granted as tantamount to a finding of bad faith by NOVA." *Id*. at 13 (Appx11). Because a finding of bad faith is also required for an award of sanctions under the Court's inherent authority, the district court similarly denied any sanctions on that ground. *Id*. at *20 (Appx16).

The district court nonetheless found the case to be exceptional, one that "stands out from" the "full panoply of patent cases" he had been involved with "both in the substantive strength of NOVA's litigating position and in the manner in which the case was litigated." *Id*. at *14, *20 (Appx12; Appx16). It stated that an independent suit for relief from a prior judgment was "an uncommon action, bringing with it an enormously high burden that under almost all circumstances

one should not reasonably expect to be able to satisfy." *Id*. But it failed to make any attempt to explain why, if at all, NOVA's suit stood out and apart from any other independent suit seeking relief from a prior judgment predicated on false testimony, false evidence, and the participation of counsel. In the district court's view, the "'pretty extraordinary things' NOVA did pre-suit ***confirm[ed]*** the extraordinary nature of this case and how it proceeded," particularly since it was based on "allegations of fraud on the court." *Id*. at *15 (emphasis in original) (Appx13). Yet this contradicted its own finding that NOVA's extraordinary pre-suit investigation demonstrated that NOVA had a good faith belief that there was a reasonable basis on which to proceed with the independent action. It is also at odds with the court's implication that NOVA's litigation position was weak and therefore it was unreasonable for it to have litigated such an action.

The district court stated that NOVA did more than simply notify it of developments in the prior case but instead used "extreme tactics" by choosing "to initiate an entirely new lawsuit, an independent action, putting forth the most damaging allegations it could." *Id*. at *15-16 (footnotes omitted) (Appx14). The court so held even though NOVA's allegations were reviewed by three former Federal judges and found appropriate in light of the adduced evidence. Less damaging allegations would not have satisfied the required burden of proof and

possibly risked that the district court would have found NOVA's Amended Compliant to have been frivolous. Although the district court asserted that "there were other, less inflammatory ways it [NOVA] could have dealt with the situation," *id*. at *14 (Appx12), the district court failed to provide a single example of what such other, non-inflammatory ways were available to NOVA at that time which could have resulted in not only the district court setting aside the prior final judgment but also would have permitted reimbursement of the substantial patent damages already paid to Dow.

Finally, the district court agreed with Dow's assessment that the case should be found exceptional "in light of 'the combination of the nature of the allegations of the pleadings, of the intensity of them, the seriousness of the charges on the one hand and the fact that, as we heard at the merits hearing, the allegations just didn't stand up. . . .'" *Id*. at *17 (Appx14).

## III. SUMMARY OF THE ARGUMENT

In awarding Dow its attorneys' fees under 35 U.S.C. § 285, the district court applied an erroneous legal standard that improperly punishes litigants for using a judicially-recognized independent action to seek legal redress for fraudulently-obtained judgments. The district court erroneously concluded that filing and maintaining an independent action was an unreasonably "extreme tactic[]." In fact,

however, it was a vehicle authorized by federal common law that was expressly preserved under Rule 60(d) of the Federal Rules of Civil Procedure and, indeed, was the only federal court remedy available to NOVA at the time that could achieve reimbursement of the money judgment that NOVA had already paid to Dow. The district court also confused the extraordinary nature of the relief sought and the pleading requirements in an independent action with whether the allegations in NOVA's amended complaint presented an exceptional case as compared to other complaints in independent actions.

The district court acknowledged that NOVA had shown that it had a good faith belief that there was a reasonable basis on which to proceed with such a lawsuit. It nonetheless erroneously relied on NOVA's "extraordinary" pre-suit investigation to support its exceptional case finding. The caution, deliberation, and care taken by NOVA in filing and maintaining its independent action, one that included consultation with three former Federal judges, persuasively establishes that NOVA's detailed amended complaint was anything but frivolous and conclusory, and therefore not so substantively weak in light of the governing law and the facts of the case as to support an award of attorneys' fees in this case.

## IV. ARGUMENT

### A. Standard of Review

This Court reviews *de novo* whether the district court applied the correct legal standard under 35 U.S.C. § 285. *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1372 (Fed. Cir. 2015). While it reviews the district court's determination of whether a case is "exceptional" for an abuse of discretion, *id.; SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1347 (Fed. Cir. 2015), it reviews the district court's findings underlying an exceptional case determination for clear error. *Gaymar Indus.*, 790 F.3d at 1372. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 n.2 (2014) (*quoting Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)); *SFA Sys.*, 793 F.3d at 1348. "A factual finding is clearly erroneous if, despite some supporting evidence, [the Court is] left with the definite and firm conviction that a mistake has been made." *Insite Vision Inc. v. Sandoz, Inc.*, 783 F.3d 853, 858 (Fed. Cir. 2015) (citations omitted).

### B. The District Court Applied an Erroneous Legal Standard in Awarding Dow Its Attorneys' Fees Under 35 U.S.C. § 285 That Improperly Punishes Litigants for Using Independent Actions To Seek Legal Redress for Fraudulently-Obtained Judgments

In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), the Supreme Court rejected arguments that a party's unreasonable conduct needed to be "independently sanctionable" or that a litigation needs to be both objectively baseless *and* brought in subjective bad faith for a case to be considered "exceptional" under Section 285. *Id*. at 1757. Instead, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id*.

In determining whether a particular case is "exceptional," the court must consider the "totality of the circumstances." *Id*. at 1756. To that end, the Supreme Court identified a "nonexclusive" list of factors that the district court should consider in determining whether to award attorneys' fees, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). "The inquiry into the objective reasonableness of a party's litigating position may still be relevant under *Octane* because, if a case 'stands out

from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated,' it is 'exceptional' under § 285." *Gaymar Indus.*, 790 F.3d at 1372 (*quoting Octane Fitness*, 134 S. Ct. at 1756).

#### 1. The District Court Erred in Characterizing NOVA's Independent Action as an "Extreme [Litigation] Tactic[]"

The district court applied an erroneous legal standard in awarding Dow its attorneys' fees under 35 U.S.C. § 285, one that improperly punished NOVA for using an independent action to seek legal redress for an allegedly fraudulently-obtained judgment. The overriding factor in the district court's decision to award attorneys' fees in this case appears to have been NOVA's use of the independent action as a means to seek relief from the patent infringement judgment. The district court's aversion toward such an action was clear, as its opinion declared that it could not "condone" such "extreme tactics in litigation" and therefore that "this is the kind of action that the Court should try to deter by an award of attorney fees to the prevailing party." 2015 U.S. Dist. LEXIS 132383 at *16 (Appx14). The district court asserted that "there were other, less inflammatory ways it could have dealt with the situation." *Id*. But it failed to explain what such other, non-inflammatory ways could have been used that would have resulted in the district

court setting aside the prior final judgment and permitted NOVA to recover the money that it had paid to Dow before this Court invalidated the asserted Dow patents in 2015.

The reality is that the filing of an independent action to overturn a fraudulently-procured judgment was the only federal court option available to NOVA at the time. When the new evidence came to NOVA's attention in 2013, judgment already had been entered by the district court, a divided panel of this Court had affirmed the judgment, and the Supreme Court had denied NOVA's petition for certiorari. The one-year time period for a Rule 60(b)(3) motion for fraud had long since expired, and the district court lacked the authority to set aside the mandate of this Court. While the district court theoretically might have retained the power to sanction Dow's counsel for their culpable actions if NOVA's allegations had been brought to the district court's attention by some other means and could have been substantiated, sanctions were not the relief that NOVA was seeking.

Rather, NOVA's sole object was to obtain relief from the judgment and, in particular, reimbursement of the more than $68 million dollars paid to Dow in infringement damages and interest on what it believed to have been a fraudulently-procured judgment. At that time, the only federal court remedy available to NOVA

that could result in Dow reimbursing its collected money judgment was an independent action for relief from a fraudulently procured judgment. This was not some novel litigation "tactic[]," but a well-recognized remedy at common law, one which predated the adoption of the Federal Rules of Civil Procedure and which was expressly preserved by the language of Rule 60(d)(1) and (d)(3).

NOVA acknowledges that the burden for a plaintiff in such an action is high, not only because the fraud ultimately needs to be proved by clear and convincing evidence, but also because of the "grave miscarriage of justice" requirement imposed on independent actions by the Supreme Court in *United States v. Beggerly*, 524 U.S. 38, 47 (1998). Nonetheless, there was nothing "unreasonable" in NOVA pursuing a litigation option available to it, particularly when the district court expressly acknowledged that NOVA had a good faith belief that there was a reasonable basis on which to proceed with the independent suit. *See Vanwyk Textile Systems, B.V. v. Zimmer Machinery America, Inc.*, 994 F. Supp. 350, 382 (W.D.N.C. 1997) ("A party should not be penalized for defending or prosecuting a lawsuit when the party has a good faith belief in its position.").

### 2. The District Court Erred in Substituting the Extraordinary Nature of the Relief Sought and the Pleading Requirements in an Independent Action For the Required Finding that the Allegations in NOVA's Amended Complaint Presented an Exceptional Case that Stood Out as Compared to Other Complaints in Independent Actions

The district court placed NOVA in an improper Catch-22. As described by the district court, an independent action "is an uncommon action, bringing with it an enormously high burden" of proof that "under almost all circumstances one should not reasonably expect to be able to satisfy." 2015 U.S. Dist. LEXIS 132383 at *14 (Appx12). Moreover, it noted that NOVA's pleadings in the independent action were based "on allegations of fraud on the court" that were "'about as serious [as] allegations in civil litigation can be.'" 2015 U.S. Dist. LEXIS 132383 at *15 (Appx.13-14). What the district court failed to properly take into account is that the extraordinary nature of the relief requested *required* that the new evidence pled by NOVA suggest something more than a mere arguable inconsistency with the original trial record. As a result, NOVA was required to plead fraud on a party or fraud on the court. It was precisely because NOVA pled in good faith facts to support the inference that "Dow, with the assistance of its in-house and outside counsel, engaged in a deliberate scheme to interfere with and to defraud the trial

and appellate courts in their adjudication of the Delaware Case on its merits" (Appx21052 at ¶11) that the district court found this case to be exceptional.

As discussed in Section B.4. below, the presence of such allegations in NOVA's Amended Complaint—which three former judges considered to be appropriate in light of the governing law and available facts—does not differentiate this case from other independent actions that have been filed. Merely pleading extraordinary conduct on the part of Dow and its attorneys should not itself give rise to an exceptional case finding. Indeed, NOVA is unaware of any case where a plaintiff has ever successfully prevailed in an independent action without pleading fraud on the court.

### 3. The District Court Improperly Relied on NOVA's "Extraordinary" Pre-Suit Investigation Undertaken in Good Faith To Support Its Erroneous Exceptional Case Finding

Compounding its error, the district court wrote that "the 'pretty extraordinary things' NOVA did pre-suit ***confirm[ed]*** the extraordinary nature of this case and how it proceeded," and the fact that NOVA was not acting in bad faith did "nothing to sway the Court to find that this case is not ***exceptional***." 2015 U.S. Dist. LEXIS 132383 at *15-16 (Appx. 13-14) (emphasis in original). Instead, the district court should have relied on such evidence to support a totally opposite

conclusion, namely, that NOVA's independent action was not materially different from other independent actions and therefore that the case was not exceptional. *See Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1378 (Fed. Cir. 2001) (plaintiff's pre-filing preparation is relevant to whether a court should award fees under § 285). The decision below leads to the anomalous result such that, in an independent action, the more thorough the pre-suit investigation, the greater the plaintiff's risk for attorneys' fees liability. There is nothing in *Octane Fitness*, however, that suggests that the Supreme Court ever intended to equate "exceptional case" with cases where "exceptional care" was taken before initiating the case. Indeed, given the extraordinary steps that NOVA took when filing and maintaining the independent action, it is a perversion of the "exceptional case" standard, both before and after *Octane Fitness*, to find this case exceptional.

Moreover, anything that discourages a litigant from a thorough investigation before bringing an independent action is obviously counterproductive and antithetical to the judicial process. As part of its extensive pre-suit investigation and, in light of the procedural hurdle that it faced, NOVA sought opinions from three former Federal judges regarding their independent reaction to the serious allegations that NOVA was raising. Had any of these judges—all of whom supported pursuing the independent action—instead cautioned against it, that

would have raised a red flag to derail NOVA's consideration of filing and maintaining this action.

### 4. This Case Does Not Stand Apart From Other Independent Actions so as To Warrant an Award of Attorneys' Fees under 35 U.S.C. Section 285

By necessity, any non-frivolous independent action will "stand out" from the traditional patent infringement case. That is the nature of the beast. The proper analysis should be whether the instant case is exceptional within the panoply of independent actions. Otherwise, the district court's reasoning would effectively mean that those who fail to prevail in an independent action would be liable for attorneys' fees as a penalty for having filed the independent action, and that clearly is not the law. It would also be bad public policy, for it would have a chilling effect that would affirmatively discourage any victimized party from seeking legal redress for fraudulently-procured judgments.

While the district court found NOVA's amended complaint lacked sufficiently plausible allegations of fact to survive a motion to dismiss, neither it nor this Court on appeal held that it was frivolous and the three former Federal judges certainly felt that it was not. On the contrary, NOVA's amended complaint was anything but some short, conclusory document devoid of facts or supporting evidence. Rather, its amended complaint was a 43-page pleading replete with

citations to sworn testimony and official documents. Indeed, NOVA submits that there is nothing in the record to suggest that its Amended Complaint is one that "stands out" from other complaints in independent actions, either with regard to the substance of its allegations or with regard to the details pled about the alleged fraudulent conduct committed by Dow and its attorneys, particularly when, as here, direct evidence of fraud was in Dow's exclusive custody and control. *Cf. ABB Turbo Sys. AG v. TurboUSA, Inc.*, 774 F.3d 979, 984 (Fed. Cir. 2014) (recognizing "that direct evidence of some facts—such as guilty knowledge, in some cases—may be distinctively in the defendant's possession").

To hold that NOVA's amended complaint was so substantively weak in light of the governing law and the facts of the case as to warrant an award of attorneys' fees would effectively require holding all cases that fail to survive a motion to dismiss to be declared exceptional. That should not be the law. *Cf. Octane Fitness*, 134 S. Ct. at 1753 (fee awards are not to be used "as a penalty for failure to win" a lawsuit) (*quoting Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)); *Gaymar Indus.*, 790 F.3d at 1373 ("In other words, fees are not awarded solely because one party's position did not prevail."); *Site Update Solutions, LLC v. CBS Corp.*, 2016 U.S. App. LEXIS 1641 at *5 (Fed. Cir. Feb. 1, 2016) (nonprecedential) ("losing a case does not make it exceptional").

Moreover, the district court expressly recognized "that NOVA was not pursuing this action in bad faith or in an effort to be unreasonable and vexatious" or for any improper purpose. 2015 U.S. Dist. LEXIS 132383 at *11 (Appx10); *see also id*. at *12 (Appx11). Instead, it found that NOVA was respectful of "the seriousness of the claims it was making" and "had a good faith belief that there was a reasonable basis on which to proceed with the independent suit." *Id*. Thus, even assuming that most litigants may not be reasonably expected to be able to satisfy at trial the high burden involved in an independent action, by the district court's own well-supported finding, NOVA's extraordinary pre-suit investigation, which included consultation with three former Federal judges, did provide it with such a reasonable belief.[21]

In addition, since all of the facts concerning Dow's fraud were in its exclusive custody and control, NOVA was reasonably relying on the ability to pursue discovery to further flesh out and substantiate the allegations in its amended complaint that were made based on the available information. For example, depositions of Mr. Valenzuela and Dr. Soares were expected to demonstrate that

---

[21] *See*, *e.g.*, Appx21527-33 at ¶¶7, 12-13, 17, 34-35; Appx21535-39 at ¶¶5, 9-11; Appx21541-48 at ¶¶10, 21-22, 27; Appx21550-604 at ¶¶3, 15; Appx21606-21 at ¶¶10-14, 17-18; Appx21622-27 at ¶¶7, 11-14; Appx21628-39 at ¶¶27-31, 40-43; Appx21641-46 at ¶¶12, 19-20, 23; see also Sections II.C.2, *supra*.

certain evidence in the trial record was knowingly false. Document discovery was expected to reveal that the tax shelter purpose of the 2002 Contribution Agreement's bulk transfer of patents to DGTI had been discussed and acknowledged at the time of its adoption, and/or that there was another pre-filing date version of Schedule A that had been withheld from production (as, for example, was referenced on the Agreement Summary Form). But NOVA was never permitted to pursue discovery, so the record is also devoid of support that NOVA acted improperly after the pleading stage of this case.

In short, there is nothing in the record that justifies NOVA being assessed attorneys' fees simply because it filed in good faith an unsuccessful independent action, the only federal court vehicle available at the time by which it could obtain the relief that it was seeking. The district court's decision will inevitably actively discourage litigants from seeking valid redress preserved under the Federal Rules of Civil Procedure and to affirmatively penalize those who file such actions with an award of attorneys' fees. Such a result is not compelled by either *Octane Fitness* or Federal Circuit precedent, and should be rejected by this Court.

## V. CONCLUSION

For the foregoing reasons, NOVA respectfully requests that this Court reverse the award of attorneys' fees and expenses.

Respectfully submitted,

April 18, 2016

/s/ Donald R. Dunner

Donald R. Dunner
Darrel C. Karl
Mark J. Feldstein
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000

*Attorneys for Appellants*
*NOVA Chemical Corporation and*
*NOVA Chemicals Inc.*

# ADDENDUM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOVA CHEMICALS CORPORATION (CANADA), and NOVA CHEMICALS INC. (DELAWARE), | ) | |
| Plaintiff, | ) | C.A. No. 13-1601 (LPS) |
| v. | ) | |
| THE DOW CHEMICAL COMPANY, | ) | |
| Defendant. | ) | |

**~~[PROPOSED]~~ ORDER AWARDING ATTORNEYS' FEES**

WHEREAS, the Court issued a Memorandum Opinion and Order on September 30, 2015, in which the Court found this to be an exceptional case pursuant to 35 U.S.C. § 285 (D.I. 62 & 63);

WHEREAS, NOVA does not challenge the reasonableness of the $2,477,060.69 paid by The Dow Chemical Company ("Dow") for attorneys' fees and expenses in this matter; and

WHEREAS, entry of this Order does not preclude NOVA from pursuing an appeal of the Court's September 30, 2015 Order;

IT IS HEREBY ORDERED, this 14th day of January, 2016, that Dow is awarded $2,477,060.69, in attorneys' fees and expenses pursuant to 35 U.S.C. § 285.

[signature]

UNITED STATES DISTRICT JUDGE, CHIEF

9678716

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOVA CHEMICALS CORPORATION (CANADA) and NOVA CHEMICALS INC. (DELAWARE), | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 13-1601 |
| THE DOW CHEMICAL COMPANY, | ) | |
| Defendant. | ) | |

**ORDER**

At Wilmington this **30th** day of **September, 2015**, consistent with the Memorandum Opinion issued this date, **IT IS HEREBY ORDERED** that Defendant's Motion for Sanctions, Attorneys' Fees, and Costs (D.I. 30) is **GRANTED** with respect to the request for attorney fees pursuant to 35 U.S.C. § 285 and **DENIED** in all other respects.

The parties shall submit a joint status report, no later than **October 9, 2015**, providing their position(s) on how the Court should determine the appropriate amount to award Defendant.

HON. LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOVA CHEMICALS CORPORATION (CANADA) and NOVA CHEMICALS INC. (DELAWARE), | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 13-1601 |
| THE DOW CHEMICAL COMPANY, | ) | |
| Defendant. | ) | |

---

Richard L. Horwitz and David E. Moore, POTTER ANDERSON & CORROON, LLP, Wilmington, DE

Ford F. Farabow, Jr., Darrel C. Karl, Ronald A. Blecker, and Mark J. Feldstein, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P., Washington, DC

H. Woodruff Turner and Thomas A. Donovan, K&L GATES LLP, Pittsburgh, PA

Louis J. Freeh and Lawrence Byrne, PEPPER HAMILTON LLP, New York, NY
Raymond A. Miller, PEPPER HAMILTON LLP, Pittsburgh, PA

Counsel for Plaintiffs

Rodger D. Smith II, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Anton R. Valukas, Harry J. Roper, Aaron A. Barlow, and Paul D. Margolis, JENNER & BLOCK LLP, Chicago, IL

Kathleen M. Sullivan, Raymond N. Nimrod, and William B. Adams, QUINN EMANUEL URQUHART & SULLIVAN LLP, New York, NY

Counsel for Defendant

**MEMORANDUM OPINION**

September 30, 2015
Wilmington, Delaware

**STARK, U.S. District Judge:**

This action is related to a prior patent infringement lawsuit in this Court involving the same parties, wherein on June 18, 2010 a judgment of infringement was entered against NOVA Chemicals Corporation (Canada) and NOVA Chemicals Inc. (Delaware) (collectively "NOVA" or "Plaintiffs"). (C.A. No. 13-1601 D.I. 1 ¶¶ 4, 7; *see also* C.A. No. 05-737) The NOVA entities were the defendants in the earlier suit.

Now pending before the Court is The Dow Chemical Company's ("Dow" or "Defendant") Motion for Sanctions, Attorneys' Fees, and Costs against NOVA. (D.I. 30) Dow was the Plaintiff in the earlier suit.

For the reasons stated below, the Court will grant Dow's motion to the extent it seeks an award of attorney fees pursuant to 35 U.S.C. § 285. Dow's motion will be denied in all other respects.

## I. BACKGROUND

On September 23, 2013, NOVA instituted this independent action in equity to set aside the prior judgment. (D.I. 1)[2] Dow filed a motion to dismiss on November 27, 2013 (D.I. 7), and thereafter NOVA filed an amended complaint (D.I. 11).

As is set out in the amended complaint, the instant case was an independent suit alleging serious misconduct against Dow and its attorneys. Specifically, NOVA alleged that Dow had perpetrated a fraud on NOVA and on the Court in regard to standing to bring suit and infringement, by knowingly presenting false and misleading testimony in the original suit. (*See, e.g., id.* ¶ 11)

[2] Unless otherwise specified, docket citations in this opinion are to C.A. No. 13-1601.

NOVA presented two theories to the Court in support of its allegations. First, NOVA argued that Dow never had standing because it did not own the patents-in-suit at the time of the earlier lawsuit:

> Dow, with the assistance of its in-house and outside counsel, engaged in a deliberate scheme to interfere with and to defraud the trial and appellate courts in their adjudication of the Delaware Case on its merits. First, to convince the courts that it had standing, Dow falsely denied that it had in 2002 transferred its patents *en masse* (including its U.S. patents) to a subsidiary in a state tax avoidance scheme. Dow fabricated the story that it had generally withheld its U.S. patents from the transfer. To cover its deceit, Dow deliberately hid material evidence regarding the transfer . . . .

(*Id.*) NOVA alleged that testimony by Dow executive Mr. Valenzuela in unrelated tax litigation in the Middle District of Louisiana disclosed that "all" of Dow's patents were, in fact, transferred in 2002, and "[h]ad this Court been privy to these newly disclosed facts, it would have viewed differently the 2002 Contribution Agreement between Dow and its subsidiary . . . and would have dismissed Dow's complaint in the Delaware Case for lack of standing." (*Id.* ¶ 15)

NOVA's second argument was directed toward the Court's finding of infringement in the original action. NOVA alleged in the instant independent action in equity that, "[O]n the merits of the infringement claims, Dow presented expert testimony that was, on information and belief, known to be false at the time it was given. The expert in question has admitted the true facts in a more recent, related Canadian proceeding." (*Id.* ¶ 11) Specifically, NOVA alleged that Dow's expert Dr. Soares,

> falsely represented to the jury in the Delaware Case that he had successfully separated, and then measured, a 'Component B' required by the claims. In fact, according to Dr. Soares' recent testimony in the Canadian Action, he knew contamination

> preventing separation was an issue and never believed that separation was possible. Dow's trial counsel knew, or should have known, Dr. Soares' testimony in the Delaware Case to have been false and unsupported.

(*Id.* ¶ 18)

On March 11, 2014, Dow filed a motion to dismiss NOVA's amended complaint pursuant to Rule 12(b)(6). (D.I. 15) The Court heard argument on the motion on July 29, 2014. (D.I. 28) (hereinafter "2014 Tr.") At the conclusion of the argument, the Court ruled from the bench, granting Dow's motion to dismiss, based on its finding that "NOVA's allegations are not plausible and further . . . NOVA has not provided a reasonable expectation that discovery will reveal evidence to support its claim." (2014 Tr. at 52) At bottom, the Court was not convinced that NOVA had satisfied its pleading obligations in the amended complaint by alleging "the grave miscarriage of justice which is required under the extraordinary circumstances of a Rule 60 independent action after the final judgment." (2014 Tr. at 54)

The Court elaborated on its reasoning. Regarding NOVA's allegations as to Dow's purported lack of standing, the Court looked to the Federal Circuit's decision on the original action, which affirmed this Court's previous finding that Dow had standing. Both Judge Farnan of the District of Delaware and the Federal Circuit found that the Contribution Agreement was clear on its face and did not transfer the patents-in-suit to the holding company, as NOVA alleged in both the original action and the instant action. (*See* 2014 Tr. at 54-55) "It follows that extrinsic evidence remains not admissible, not material, not relevant to the meaning of the agreement or to the standing issue. . . . [T]he new evidence, the testimony of Mr. Valenzuela in another action[,] has nothing to do with the authenticity of Schedule A [of the Contribution

Agreement] which is the only point on which this Court considered extrinsic evidence regarding standing." (2014 Tr. at 55-56) The Court further found that new arguments raised by NOVA that there was a different "Schedule A" than what the District Court and Federal Circuit had previously determined to be Schedule A, were untimely, and in any case the version of Schedule A to which NOVA was now pointing was not created until 2009 and could not have governed the 2005 transfer. (*See* 2014 Tr. at 55-56)

Regarding NOVA's allegations relating to the finding of infringement, the Court found that "[a]t bottom, NOVA has identified nothing more than arguably inconsistent statements by one witness, Dr. Soares. The cases indicate that even perjury is likely not enough to be the basis for the type of grave miscarriage of justice that an independent action like the one NOVA has brought must allege and ultimately prove. *See, e.g.*, *Herring v. United States*, 424 F.3d 384 (3d Cir. 2005). Here, NOVA has not even plausibly alleged perjury. NOVA has not even adequately alleged the purported inconsistency goes to any fact that was materially disputed in the 2005 Delaware action. It is also notable that . . . [Dr. Soares'] purportedly inconsistent testimony was available to the factfinder [in another action], and that Court found infringement by NOVA." (2014 Tr. at 56)

The Court also noted that "the allegations here are I think just about as serious [as] allegations in civil litigation can be. NOVA is alleging a conscious, conscientious, deliberate deception by Dow, by its in-house counsel, by its outside counsel, and by at least one of its witnesses, a conscious effort to defraud the District of Delaware, the Federal Circuit, I suppose the Supreme Court as well, as well as NOVA." (2014 Tr. at 53)

The Court held that NOVA had failed to state a claim, even considering all well-pleaded

factual allegations in favor of NOVA. (*See* 2014 Tr. at 52) Accordingly, the Court granted Dow's motion to dismiss the amended complaint and dismissed the case. (D.I. 25)

On September 5, 2014, Dow filed its motion for sanctions, attorney fees, and costs. (D.I. 30) In support of its motion, Dow contends that "[s]anctions are necessary both to compensate Dow for the time and expense it has been forced to put into responding to NOVA's frivolous claims, and as a deterrent to attempts by future parties and their attorneys to obtain endless relitigation without regard for the orderly administration of justice." (D.I. 31 at 11) Dow points to "three separate but overlapping" mechanisms by which the Court could order sanctions against NOVA. (D.I. 31 at 12) The first is 28 U.S.C. § 1927, "as a sanction for vexatiously, and in bad faith, multiplying the proceedings (and associated expenses) connected with Dow's patent-infringement suit by filing and maintaining this frivolous lawsuit." (*Id.*) Second is 35 U.S.C. § 285, "because this case – the satellite of an ongoing patent litigation – is an 'exceptional' one in which Dow ought not be made to bear the costs of NOVA's unreasonable litigation tactics." (*Id.*) Finally, Dow argues the Court "should award sanctions under its inherent authority to police and deter oppressive and bad-faith litigation misconduct." (*Id.*)

NOVA opposed the motion and it was fully briefed. (*See, e.g.*, D.I. 31, 35, 37) After briefing on the motion for sanctions was completed, NOVA on January 12, 2015 filed an appeal of the Court's order granting Dow's motion to dismiss the amended complaint. (D.I. 42)

The Court heard argument on the motion for sanctions on March 6, 2015. (*See* D.I. 52) (hereinafter "2015 Tr.")

On June 9, 2015, the Federal Circuit affirmed this Court's judgment dismissing NOVA's amended complaint without opinion. (*See* D.I. 53; *see also Nova Chemicals Corp. (Canada) v.*

*Dow Chem. Co.*, 607 F. App'x 993 (Fed. Cir. 2015) (Federal Circuit Rule 36 summary affirmance without opinion))

Also pending before the Federal Circuit in the meantime was NOVA's appeal from this Court's decision in the original action (C.A. No. 05-737) that Dow should be awarded a specified amount of supplemental damages (for infringement that occurred after the period at issue in the first trial). In April 2013, the Court had conducted a bench trial, and then in March 2014 issued an opinion granting Dow supplemental damages for NOVA's patent infringement. (*See* C.A. NO. 05-737 D.I. 760) On August 28, 2015, the Federal Circuit reversed this Court's judgment for Dow, holding that the asserted claims of the patents-in-suit were indefinite under *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014). *See Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 2015 WL 5060947, at *10 (Fed. Cir. Aug. 28, 2015). The mandate in NOVA's appeal has not yet issued, and on September 28, 2015 Dow filed a petition for rehearing and rehearing en banc.

## II. LEGAL STANDARDS

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Third Circuit has interpreted § 1927 to permit fee awards where "an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002). A finding of

willful bad faith is required. *Id.* at 181.

"Similarly, an award of fees and costs pursuant to the court's inherent authority to control litigation will usually require a finding of bad faith." *Id.* The Supreme Court has authorized a lower court to use its "inherent power to police itself" and "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation marks omitted).

In patent law, a court is also authorized by statute "in exceptional cases [to] . . . award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court has held that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). Ultimately, the Court must make a discretionary decision based on the totality of circumstances. *See id.* A party moving for attorney fees must demonstrate, by a preponderance of the evidence, that a case is "exceptional." *Id.* at 1758.

## III. DISCUSSION

### A. Fees and Expenses under 28 U.S.C. § 1927

Both sides agree that bad faith is required to assess sanctions under 28 U.S.C. § 1927. (*See* 2015 Tr. at 19, 53) Here, although the Court has found that NOVA's suit lacked merit, the Court has further concluded that NOVA was not pursuing this action in bad faith or in an effort to be unreasonable and vexatious. Therefore, sanctions under § 1927 will be denied.

NOVA attached to its briefing on sanctions declarations from several former federal

judges, and from other lawyers as well, all of whom had reviewed NOVA's complaint and/or amended complaint, and all of whom stated in one form or another that they believed NOVA had a plausible basis for filing the instant independent action. (*See* D.I. 35 Exs. 1-9) As NOVA's counsel described at the hearing on this motion, "Here, if you are going to prove bad faith, you would have to prove that there was an inadequate pre-suit investigation, that counsel brought the case for reasons other than the merits; which, by the way, there has been no showing in the record that that is the case." (2015 Tr. at 53-54) The extent of the pre-suit investigation in this case does appear to be "extraordinary." (2015 Tr. at 54) NOVA has put forth a great deal of evidence in the form of declarations describing its pre-suit investigation, which shows that NOVA understood the seriousness of the claims it was making, and in recognition of that fact took extra precautions to have the complaint reviewed independently before it was filed. NOVA has, thus, shown that it had a good faith belief that there was a reasonable basis on which to proceed with the independent suit.

There is no credible evidence in the record that NOVA was pursuing this case for any purpose other than to seek relief from what NOVA felt was an unjust ruling in the 05-737 action. The Court does not agree with Dow that this action was nothing more than an attempt to mount costs against Dow to gain a "significant leverage point in negotiations to settle the parties' ongoing, multi-front patent litigation." (D.I. 31 at 17) Nor would it be proper to treat NOVA's failure to state a claim on which relief could be granted as tantamount to a finding of bad faith by NOVA.

As the Court has found NOVA did not act in bad faith, it will deny Dow's request for sanctions pursuant to § 1927.

**B. Fees Under 35 U.S.C. § 285**

An award of attorney fees under § 285 is available in a nominally "nonpatent" case where the nonpatent issues are "intertwined with the patent issues" in the sense that "the rights at issue . . . properly invoke patent laws." *Interspiro USA, Inc. v. Figgie Int'l Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994). Because this independent action is an action in equity to set aside a judgment of patent infringement in the earlier action, and the basis for the independent action was testimony which allegedly conflicted with that which was presented in Delaware in the prior proceeding, the Court finds that the nonpatent issues are sufficiently "intertwined with patent issues" to invoke § 285.[3]

Furthermore, the Court finds this case is exceptional under *Octane Fitness* and will award attorney fees under 35 U.S.C. § 285. In particular, the Court finds that this case is exceptional, both in the substantive strength of NOVA's litigating position and in the manner in which the case was litigated.

NOVA elected to file an independent suit in equity for relief from a prior judgment under Rule 60, which is an uncommon action, bringing with it an enormously high burden that under almost all circumstances one should not reasonably expect to be able to satisfy. Even accepting that NOVA believed everything it alleged, there were other, less inflammatory ways it could have dealt with the situation.

The Court discussed this point with NOVA's counsel at the hearing on the sanctions motion. Counsel was, understandably, emphasizing that this suit was filed only after an

---

[3]NOVA does not argue that § 285 does not apply here, but instead argues that this case is not exceptional and/or that an award of fees is not warranted. (*See* D.I. 35 at 17-20; 2015 Tr. at 56-57)

extensive pre-suit investigation:

| | |
|---|---|
| Plaintiffs' Counsel: | Paragraphs 9 and 11 [of a declaration] show that he clearly thought there was a basis to call these contradictory statements to the Court's attention . . . They [NOVA] did not rush to file in court but instead continued to review the facts and gather more information. |
| The Court: | Of course, after all of that, they didn't just bring it to the Court's attention. They filed this extraordinary independent action making very serious allegations against in-house and outside counsel as well as at least one of the witnesses. |
| Plaintiffs' Counsel: | That's right. |
| The Court: | Isn't that something far beyond simply just bringing to the Court's attention potential inconsistencies? |
| Plaintiffs' Counsel: | Well, Your Honor, if that was all there was, was Judge Lifland [who participated in the pre-suit investigation and filed a declaration], that might be an argument that could be made. However, after that was done, NOVA and its counsel brought in both Judge Freeh and Judge Michel. This is a pretty extraordinary thing which shows how serious they were taking this. |

(2015 Tr. at 39)

In the Court's view, the "pretty extraordinary things" NOVA did pre-suit ***confirm*** the extraordinary nature of this case and how it proceeded. Not only was NOVA seeking an exceptional remedy to set aside a prior judgment, they were doing so on allegations of fraud on the court. As previously noted, the allegations were "about as serious [as] allegations in civil

litigation can be." (2014 Tr. at 53) NOVA did more than simply notify the Court of developments in the prior case; instead, NOVA chose to initiate an entirely new lawsuit, an independent action,[4] putting forth the most damaging allegations it could.[5] The Court cannot condone utilizing such extreme tactics in litigation. Instead, this is the kind of action that the Court should try to deter by an award of attorney fees to the prevailing party. The extensive pre-suit investigation NOVA undertook certainly undercuts Dow's assertion that NOVA was proceeding in ***bad faith***, but it does nothing to sway the Court to find that this case is not ***exceptional.***

Despite the high burden which NOVA faced in its suit in equity, NOVA nonetheless moved forward with its theories, theories which the Court ultimately found were not even plausible. (*See* 2014 Tr. at 52) Regarding the unreasonableness of the manner in which this case was litigated, Dow argues that in light of "the combination of the nature of the allegations of the pleadings, of the intensity of them, the seriousness of the charges on the one hand and the fact that, as we heard at the merits hearing, the allegations just didn't stand up . . .," this case should

[4]NOVA argues the Court cannot find this case exceptional in the way it was litigated because it was never actually litigated; it was dismissed, and therefore "I don't think there has been any vexatious litigation that occurred here." (2015 Tr. at 55) In these circumstances, where the case before the Court arose from an entire litigated proceeding, the Court finds this narrow definition of litigation unpersuasive. Furthermore, there is nothing in *Octane Fitness* which prohibits a finding that a case is exceptional if it is dismissed at the early stages.

[5]At the hearing on the motion for sanctions, the Court asked whether NOVA's counsel agreed that the allegations in the amended complaint "are potentially career ending on the folks on the Dow side, if true, and that they besmirch counsel's reputations and put their careers at risk." (2015 Tr. at 57) NOVA's counsel replied: "I do agree that they were serious allegations, that they did put careers at risk." (*Id.*)

be found to be exceptional. (2015 Tr. at 5-6) The Court agrees with this assessment.[6]

NOVA cites cases that it contends show the instant case was not "exceptional." The Court disagrees. NOVA cites *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), stating that there, "[i]n essence, the defendant manufactured documents that ostensibly gave it the right to enforce a patent that it should not have possessed. The Court held that the concocted article constituted a fraud on the Court." (D.I. 35 at 19) NOVA's attempt to compare Schedule A to a falsified article printed to support fraudulent patent rights, is misplaced.

Nor is the purportedly conflicting testimony of Mr. Valenzuela and Dr. Soares the type of conduct that is in any meaningful sense comparable to fabricating the article at issue in *Hazel-Atlas*. *Hazel-Atlas* actually addresses this very point, stating:

> Every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments. This is ***not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury***. Here . . . we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals.

*Hazel-Atlas*, 322 U.S. at 245 (emphasis added).

Finally, the Court recognizes that there were significant, arguably pertinent decisions handed down by the Federal Circuit after the sanctions motion was briefed and argued. The Court directed the parties to file letter briefs addressing the relevance, if any, of the Federal Circuit's affirmance of this Court's dismissal of NOVA's independent action and that Court's reversal of this Court's judgment awarding supplemental damages to Dow for NOVA's patent

[6]In the amended complaint NOVA, too, pled that this case is exceptional (although its reasoning for this conclusion was, of course, quite different). (*See* D.I. 11 at 43)

infringement. (*See* D.I. 56, 58-61) Having considered the parties' submissions, the Court concludes that while both of the appellate decisions are fair considerations under § 285 – which requires the Court to assess whether, under the totality of the circumstances, this case is exceptional – they do not make this case anything other than exceptional. Just because the patents that launched a decade of litigation between these parties have now, after *Nautilus*, been declared indefinite (after having been found on appeal pre-*Nautilus* to be not indefinite) does not justify NOVA's decision to pursue this extraordinary, independent action.[7]

In sum, having considered this case in comparison to the full panoply of patent cases in which the undersigned judge has been involved, this case "stands out from others." It is exceptional. The Court will grant Dow's request for attorney fees under § 285.

### C. Court's Inherent Authority

A finding of is required for sanctions under the Court's inherent authority, just as it is required for sanctions under 28 U.S.C. § 1927. For the reasons discussed above in connection with § 1927, the Court will deny sanctions on the basis of its inherent authority.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendant's Motion for Sanctions, Attorneys' Fees, and Costs. An appropriate Order follows.

---

[7]One of the reasons for the high burden imposed on parties challenging a final judgment under Rule 60 is the desire for finality. Finality is of great importance not just to courts, but to litigants as well.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing CORRECTED NONCONFIDENTIAL BRIEF FOR PLAINTIFFS-APPELLANTS NOVA CHEMICALS CORPORATION (CANADA) AND NOVA CHEMICALS INC. (DELAWARE) using the Court's CM/ECF filing system. Counsel registered with the CM/ECF system were served via electronic means to counsel listed below on this 18 April, 2016.

Harry J. Roper
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
hroper@jenner.com

/s/ Darrel C. Karl

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(A)(i). The brief contains 8,902 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

By: /s/ Darrel C. Karl
Darrel C. Karl
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000

*Attorney for Appellants/Cross-Appellees NOVA Chemical Corporation and NOVA Chemicals Inc.*